UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ROGER W. SODERSTROM and | ) | Case No.  6:11-bk-16036-KSJ |
| TANSEY M. SODERSTROM , | ) | Chapter  7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION APPROVING
TRUSTEE'S COMPROMISE OF CONTROVERSY**

At the time debtors filed bankruptcy, they were the sole owners of Stirling International Realty, Inc. ("Stirling"), a real estate brokerage franchise with Sotheby's International Realty, Inc.[1] Debtors also wholly own related entities Data and Document Storage, LLC; World Wilde Auction Services, LLC; Stirling International Properties, Inc.; and First Global Title, LLC (the "Related Entities") used to operate the Stirling business.  Since 2005 Stirling's income has declined steadily as a result of the national economic downturn.[2] After debtors filed this personal Chapter 7 bankruptcy case, Stirling filed a Chapter 11 reorganization case.[3] The Chapter 7 trustee, Richard B. Webber III, now seeks the Court's approval of a settlement agreement (the "Settlement") in which he proposes to sell Stirling and the Related Entities back to debtors.[4] The Court has considered the Settlement and the creditors' objections[5] and approves the Settlement as reasonable and in the best interest of creditors.

---

[1] Stirling does business as "Stirling Sotheby's International Realty."
[2] Case No. 11-bk-2388 Doc. No. 138 (Stirling International Realty's Second Amended Disclosure Statement).
[3] Case No. 11-bk-2388.
[4] Doc. No. 165 and Exhibit 1.
[5] Doc. Nos. 179 and 181.

### The Trustee's Motion to Settle is Granted

Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a settlement agreement between interested parties. Although a settlement agreement must, at a minimum, be fair and "not fall below the lowest point in the range of reasonableness,"[6] the ultimate decision to approve a settlement lies within the sound discretion of the bankruptcy court.[7] A bankruptcy must "apprise itself of all necessary facts to make an intelligent evaluation and to make an independent judgment as to whether the settlement presented is fair and equitable."[8] The Eleventh Circuit in *In re Justice Oaks, II, Ltd.* established the following factors to determine the fairness and reasonableness of a proposed settlement:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[9]

A trustee must make a comprehensive examination of the underlying facts and prove a settlement agreement is reasonably beneficial to an estate.[10] A court is not required to decide the merits of each claim or hold a "mini trial" of the underlying litigation but must have enough information to evaluate the reasonableness of a trustee's proposed settlement.[11] When the potential

---

[6] *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir. 1990) (citations omitted) (setting the standard for Rule 9019 motions); *In re Air Safety Int'l, L.C.,* 336 B.R. 843, 852 (S.D. Fla. 2005) (upholding a bankruptcy court's approval of a stipulation agreement).

[7] *In re Chira,* 367 B.R. 888, 896 n.10 (S. D. Fla. 2007) (citing *In re Air Safety Intern., L.C.,* 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Harbour East Development, Ltd.,* 2012 WL 1851015 at *5 (S.D. Fla. May 21, 2012).

[8] *Romagosa v. Thomas,* 6:06-CV-301-ORL-19, 2006 WL 2085461 (M.D. Fla. July 25, 2006) *aff'd sub nom. In re Van Diepen, P.A.,* 236 F. App'x 498 (11th Cir. 2007).

[9] *In re Justice Oaks II, Ltd.,* 898 F.2d at 1549. A bankruptcy court need not explicitly address each of the four elements to approve a settlement agreement. *In re Chira,* 567 F.3d 1307, 1313 (11th Cir. 2009).

[10] *See Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602 (5th Cir 1980) ("The Court must be apprised of all necessary facts for an intelligent, objective and educated evaluation" in determining the reasonableness of a proposed settlement agreement); *.In re Seminole Walls & Ceilings Corp.,* 366 B.R. 206, 228 (Bankr. M.D. Fla. 2007) (the proponent of a settlement has the burden of establishing the settlement is fair and equitable), *Butler v. Almengual (In re Almengual),* 301 B.R. 902, 907 (Bankr. M.D. Fla. 2003) (same); *In re Vazquez,* 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005) (noting "The chapter 7 trustee is required to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays, and expense of prolonged litigation in an uncertain cause.").

[11] *Harbour East,* 2012 WL 1851015 at *6.

augmentation of a bankruptcy estate "involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously, and an inquiring court must accord him wide latitude in deciding whether to [settle]."[12]

As part of the Settlement, the trustee proposes to sell back to debtors any interest the trustee acquired in Stirling or the Related Entities.[13] Debtors have agreed to pay $10,000 for all the stock and interests in these interrelated companies and waive the exemptions they have asserted as to some of their other business entities.[14]

In exchange, the trustee will withdraw certain motions he has pending in debtors' and Stirling's bankruptcies,[15] including his motion to revoke Stirling's Chapter 11 Plan Confirmation because debtors, as sole owners of Stirling, proceeded as debtors-in-possession in Stirling's Chapter 11 bankruptcy after they filed for Chapter 7.[16]  The trustee's motion argues that because all debtors' assets individually became property of their Chapter 7 estate upon filing,[17] including their ownership interest in Stirling, debtors acted without authority when they proceeded to confirm a plan in the Stirling bankruptcy without the trustee's involvement.

The trustee submits this compromise is fair, equitable, and in the best interest of the estate because the companies debtors are purchasing are largely valueless, and the estate will receive $10,000 without having to expend the time and money to pursue more unproductive litigation.[18] The trustee further argues that even if he were able to recover and sell the stock of these companies,

---

[12] *In re Chira*, 367 B.R. 888 (S.D. Fla. 2007) (citing *In re Mailman Steam Carpet Cleaning Corp.,* 212 F.3d 632, 635 (1st Cir. 2000)).

[13] Doc. No. 165.

[14] Doc. No. 165, Exhibit 1 at ¶ 4. Debtors claim exemptions in Stirling 2, LLC, Delro Partners, Global Realty 1, LLC, Plaza N 15 Partners, LLC, Plaza N 15, LLC, SOC Plaza Suites, LLC, Stirling 16, LLC, Stirling Global Gallery, Inc., and Stirling Media Group, Inc.

[15] Doc. No. 165, Exhibit 1 at ¶ 3. In the Soderstroms' bankruptcy, the trustee agrees to withdraw Trustee's Motion for Turnover of Property of the Estate re: Referral Fee (Doc. No. 141), Second Amended Objection to Debtor's Claim of Exemptions and for Sanctions with 30 Days Negative Notice (Doc. No. 140). In Stirling's bankruptcy, the trustee agrees to withdraw Trustee's Motion for Reconsideration, or Alternatively, to Revoke Order Approving Debtor's Second Amended Disclosure Statement and Confirming Fourth Amended Chapter 11 Plan (Doc. No. 205 in Case No. 11-bk-2388), and Motion to Convert Case to Chapter 7 and Request for Court to Shorten Time for Response and Hearing (Doc. No. 209 in Case No. 11-bk-2388).

[16] Doc. No. 205.

[17] 11 U.S.C. § 541(a)(1).

[18] Doc. No. 165 at ¶ 10.

he would not gain anything of value for debtors' estate because taking over Stirling would trigger a default under its franchise agreement with Sotheby's, destroy the Chapter 11 reorganization, and effectively close the business.[19]

Creditors Horizons a Far ("Horizons"), Joan Thompson, and J. Thompson Investments ("Creditors") object to the Settlement for multiple reasons.  First, Creditors argue the Settlement is not based on the trustee's informed decision because the trustee has not provided any information to support his contention that the properties are largely worthless. He has not submitted a valuation of any of the Related Entities, nor has he attempted to auction them to determine their market value.[20] Pointing to debtors' initial willingness to contribute $25,000 to purchase Stirling from Stirling's bankruptcy estate,[21] Creditors argue $10,000 is not a fair price to pay for all five companies because they are worth at least $25,000 to the debtors and taking less reduces the claims debtors' estate will be able to distribute to creditors.

In response to the trustee's claims that the entities are largely worthless, Creditors point to the income that some of the Related Entities generate as an indication of the companies' positive market values.  Creditors also claim First Global Title, LLC and World Wide Auction, LLC must have positive values because both pay annual filing dues and both submit an annual report to the State of Florida, and no company would pay these amounts if it were valueless. Finally, Creditors argue the Settlement should be denied because they have not had an opportunity to conduct their own discovery that would test the validity of the trustee's assertions that none of these entities have value.[22]

---

[19] As part of the Sotheby's franchise agreement, if debtors cease to be owners of Stirling, Sotheby's may immediately revoke its franchise agreement. Hearing March 15, 2012.
[20] Doc. Nos. 179 and 181.
[21] *See* Stirling's Fourth Amended Chapter 11 Plan (Doc. No. 154 in Case No. 11-bk-2388) and Second Amended Disclosure Statement (Doc. No. 138 in Case No. 11-bk-2388).
[22] Doc. No. 179 at 4–5.

Horizons also claims the trustee's withdrawal of claims against debtors or Stirling is unreasonable because waiving these claims is not in the best interest of creditors.[23]  Specifically, Horizons objects to the trustee's withdrawal of his motion to revoke the Court's Order Confirming Stirling's Fourth Amended Plan and Disclosure Statement[24] because pursing this claim against Stirling "may add potential assets to debtors' estate."  Horizons also argues debtors' waiver of their exemptions is a trivial conciliation because most of the property debtors claim as exempt is already owned by someone other than the debtors (including the trustee) or has no value.[25]

This Court agrees with the general policy of encouraging settlements and favoring compromises to reduce the costs of litigation.[26] As with most settlements, it may be possible to achieve a more favorable outcome for creditors through additional litigation. But, when the administration of an estate is burdened with costly litigation and drawn out to a pointless end, the trustee is encouraged to find alternative solutions.[27]  Litigation costs are particularly burdensome on bankruptcy estates given the financial instability of a debtor.[28]

Here, the Court respects the trustee's business judgment that the risks of litigation and ultimately obtaining no value for the estate justify his decision to settle.[29]  In this case, even if the trustee were to administer all the assets of debtors' estate without selling Stirling or the Related Entities back to debtors, the difficulties in recovering any value strengthen the trustee's arguments in favor of settlement.  Stirling, hampered by debts far exceeding its assets, is valueless to anyone other than debtors.[30]  In the March 15, 2012 valuation hearing, the Court found the corporate value

---

[23] Doc. No. 179.
[24] Doc. Nos. 186 and 205.
[25] Doc. No. 179.
[26] *In re Bicoastal Corp*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).
[27] *In re Harbour East Development*, 2012 WL 1851015 at *1 (asking whether the settlement proposed was reasonable considering the great costs to prevail on an appeal, even if a more favorable outcome may be possible through protracted litigation).
[28] *In re S & I Investments*, 421 B.R. 569, 586 (Bankr. S.D. Fla. 2009) (citations omitted).
[29] Doc. No. 165 at ¶ 16. *See In re S & I Investments*, 421 B.R. at 584 (upholding a bar order because it substantially reduced a claim against the estate and eliminated the expenses of protracted litigation).
[30] Hearing March 15, 2012.

of the stock was likely less than zero,[31] but acknowledged the unique intrinsic value of the Stirling stock to debtors. The Court found the value of Stirling *to debtors* is not $0 because "debtors value this stock greatly and hope to realize a return on investment in the future."[32] The Court left unanswered the question of just how much intrinsic value the debtors should place on the stock. Regardless of whether Stirling is worth $10,000 or $25,000 to debtors, without debtors at the helm, Sotheby's has stated it would likely revoke debtors' franchise agreement with Stirling.[33] If this were to occur, Stirling would almost certainly cease to exist.[34]

Recovery of any value from the Related Entities is also unlikely. Debtors, Stirling, and the trustee have all stated that the Related Entities operate solely in support of Stirling's real estate brokerage business and that, without Stirling, the Related Entities are worthless.[35] Their only "value" comes from what debtors would be willing to pay for them. Even though, as Creditors point out, the Related Entities may generate some income through the Stirling business, income alone is not an indication of value. Creditors argue they *might* be able to find value if they had more time for discovery,[36] but Creditors have had the opportunity to discover additional financial information about the Related Entities by examining debtors at either the March 15 or July 25, 2012 hearings, yet they failed to do so or even ask a single question. Creditors simply have failed to establish a plausible theory of recovery against any of the Related Entities that would dispute the trustee's claim that these entities are valueless.[37]

Facing this possibility that debtors would walk away without contributing anything for the companies, the trustee reasonably has agreed to a value of $10,000 to recover something for the

---

[31] Hearing, March 15, 2012.
[32] Hearing March 15, 2012.
[33] Hearing March 15, 2012.
[34] Furthermore, the Stirling/Sotheby's franchise agreement has an anti-assignment clause preventing the sale of the franchise to third parties.
[35] The Related Entities operate only to support the business functions of Stirling. If Stirling ceases to exists, the Related Entities necessarily also fail. Hearing July 25, 2012.
[36] Doc. No. 181 at 4–5.
[37] *In re Solar Cosmetic Labs, Inc.*, 2010 WL 3447268 (Bankr. S.D. Fla. Aug. 27, 2010) (noting an opponent of a settlement agreement must show the likelihood of recovery is more than conceivable).

estate.  The trustee need not spend the considerable time it would take to auction the properties to determine their value.  An auction could be as labor intensive  and perhaps more costly as holding a full blown valuation hearing.  Moreover, given Sotheby's anti-assignment provision, an action or sale to anyone other than the debtors would be pointless.  A settlement necessarily vitiates the need to decide the merits of each underlying argument to promote judicial efficiency and foster cooperation among the parties in resolving complex cases such as this.

The Court agrees that the Settlement should be approved. The trustee testified that $10,000 is a reasonable and fair price to pay to avoid protracted litigation and costly valuation hearings, with potentially no recovery in sight.[38]  With enough time and resources, the trustee may be able to squeeze more than $10,000 from debtors or pursue a liquidation strategy of these assets, but this is not necessary. Settling a claim for less than the maximum conceivable amount of recovery is acceptable in complex cases where a trustee envisions the costs of litigation outweigh the likelihood of success.[39] Debtors may have offered $25,000 at one time, but they are not offering it now to settle the matter.  If they refuse to pay more and walk away from assets, the trustee may very well be left with nothing.  In this case, under these circumstances, a bird in the hand is worth two in the bush.[40]

With respect to the trustee's proposal to withdrawal his motion to revoke Stirling's discharge and convert Stirling's Chapter 11 case to a 7, the Court cannot see how forcing the trustee to pursue these actions would recover anything additional for Creditors, who are not even creditors in Stirling's Chapter 11 bankruptcy.  Even if Creditors had claims against Stirling, Stirling estimates in its Chapter 11 Plan and Disclosure Statement that no funds would be available for distribution to

---

[38] The Court notes debtors will use a loan, and not estate assets, to buy Stirling and the Related Entities from the estate. Doc. No. 236, Exhibit 1 at 6.

[39] *Romagosa v. Thomas*, 2006 WL 2085461 at *8.

[40] *See In re Gallagher*, 283 B.R. 342, 347 (M.D. Fla. 2002) (applying the old English adage to a similar settlement motion).

unsecured, administrative, or priority creditors if Stirling were liquidated.[41] Thus, no assets would

be distributed to debtors that would become property of debtors' Chapter 7 estate. Therefore, the

Court finds no reason to undermine the trustee's judgment to withdraw these motions.  Nor does the

Court see any harm in accepting debtors' waiver of exemptions to other assets.

The Court finds the trustee's Settlement is based on a sound and thorough assessment of the

facts.[42]  The trustee has duly weighed the substantial administrative costs and risks associated with

continued litigation against the prospects of recovery in excess of the Settlement and has concluded

the Settlement is in the best interest of the estate.  The Court agrees. The Settlement is approved as

to Stirling and the Related Entities to the extent the trustee owns them.[43]

Horizons argues the trustee may not administer Stirling Properties International, Inc., one of

the Related Entities listed by the trustee in the Settlement, because this entity is not listed on

Florida's Division of Corporation website. The entity listed by the trustee is likely a typographical

error; debtors have claimed ownership in *Stirling International Properties, Inc.,* which *is* listed on

the website as owned by debtors.[44] Additionally, debtors list a 50% undivided interest in First

Global Title, LLC, and list the other 50% as owned by Phil Logas, the managing member named on

Florida's website.[45] The trustee may sell these Related Entities to debtors, but only to the extent

debtors owned them on the date this bankruptcy case was filed, and only after debtors submit

evidence of ownership of their 50% interest in First Global Title, LLC to the trustee.

### Stirling's Motion to Authorize Release of Escrow Funds is Granted

In January of 2012, Stirling brokered the sale of real property owned by an affiliate of the

debtors, for which Stirling was due to receive $16,920 in net commissions.[46] The Court ordered the

---

[41] Stirling's Fourth Amended Chapter 11 Plan (Doc. No. 154 in Case No. 11-bk-2388) and Second Amended Disclosure Statement (Doc. No. 138 at 11–12 in Case No. 11-bk-2388).
[42] *In re Harbour East Development*, 2012 WL 1851015 at *1.
[43] A trustee may administer assets that make up a debtor's bankruptcy estate under § 541(a)(1). 11 U.S.C. § 704.
[44] Doc. No. 136. Florida Department of State Division of Corporations, Detail by Entity Name, "Stirling International Properties, Inc.".
[45] Doc. No. 136. Florida Department of State Division of Corporations, Detail by Entity Name, First Global Title, LLC.
[46] Doc. Nos. 78 & 110.

commission payment to be held in escrow pending further order of the Court.[47] Stirling has filed a

Motion to Authorize the Escrow Agent to Release Escrow Funds.[48]

The Court grants Stirling's motion, and rejects Horizon's argument that these funds should

not be released to Stirling, but instead should be used to pay debtors' creditors.[49]   The funds in

escrow are owed to Stirling, not to debtors personally, and are not property of debtors' bankruptcy

estate.   Stirling is a debtor-in-possession authorized to use these funds to operate its business as it

sees fit.[50] Horizons filed a claim against debtors and is a creditor in debtors' bankruptcy only.[51]

Horizons is *not* a creditor in Stirling's bankruptcy, and therefore lacks standing to pursue claims

against property that properly belongs to Stirling.[52]

A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on August 8, 2012.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[47] *Id.*
[48] Doc. No. 135.
[49] Doc. No. 179 at ¶ 7-9.
[50] 11 U.S.C. §§ 1107 and 1108.
[51] A "Creditor" is an "entity that has a claim against the debtor ..." 11 U.S.C. § 101(9).
[52] A court will not hold a corporation liable for a shareholder's debts absent a showing piercing the corporate veil is warranted. *See In re Hillsborough Holdings Corp.,* 166 B.R. 461, 468-69 (Bankr. M.D. Fla. 1994) (noting "[i]n order to pierce the corporate veil under Florida . . . law, it is the claimant's burden to establish by a preponderance of the evidence that: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation independent existence, was in fact non-existent and the shareholder shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.") (citing *Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla.1984); *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260 (D.Del.1989)).